# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 04-1312

BONNIE HAMILTON

VERSUS

CHARLES R. WALKER AND ALLSTATE INS. CO.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 93,576
HONORABLE RICHARD ERIC STARLING, JR., CITY COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED IN PART & REVERSED IN PART.**

Steven W. Cook
Attorney at Law
P. O. Box 13424
Alexandria, LA 71315
(318) 448-0085
Counsel for: Plaintiff/Appellee
Bonnie Hamilton

**Michael Thomas Johnson**
**Johnson & Siebeneicher**
**P. O. Box 648**
**Alexandria, LA 71309**
**(318) 484-3911**
**Counsel for: Defendant/Appellant**
**Allstate Ins. Co.**
**Charles R. Walker**

**J. P. D'Albor**
**Wheelis & Rozanski**
**P. O. Box 13199**
**Alexandria, LA 71315-3199**
**(318) 445-5600**
**Counsel for: Defendant/Appellant**
**Allstate Ins. Co.**
**Charles R. Walker**

**SAUNDERS, J.**

This suit revolves around an automobile accident. The trial court found Mr. Walker 100% at fault and awarded Ms. Hamilton damages. We affirm in part and reverse in part.

**FACTS**

On October 22, 1999, around 2:54 p.m., an automobile accident occurred involving Mr. Walker and Ms. Hamilton. At the time of the accident, Mr. Walker was traveling north on the service road that runs parallel to MacArthur Drive or U.S. Hwy. 71. Ms. Hamilton had crossed the four lanes of traffic on U.S. Hwy. 71 and was making a left turn onto that same service road when the two vehicles collided. Mr. Walker's lane was controlled by a yield sign, and the lane crossing U.S. Hwy. 71 was controlled by a red light signal, which Ms. Hamilton says was green.

Immediately following the accident, the police were notified and Officer Craig R. Mikel arrived to investigate the accident. Officer Mikel completed an accident report but did not issue any traffic citations.

Ms. Hamilton filed suit against Charles Walker and Allstate Insurance Company. Later, she amended her petition to name as a defendant her own insurance company, New Hampshire Insurance Company. Trial was held on August 6, 2004, with Ms. Hamilton being the only witness presented at trial. Ms. Hamilton's treating physician, Dr. Gregory Brian, provided a deposition on November 13, 2003, and this deposition was admitted at trial and evaluated by the trial judge. The defendant, Mr. Walker, did not testify at trial, but his deposition taken on June 20, 2003 was introduced at trial and also evaluated by the judge. Officer Mikel failed to appear at either of his two scheduled depositions, and, therefore his accident report was

introduced into evidence. However, any information in the report representing the officer's opinion about how the accident occurred or who was at fault was excluded.

After hearing the testimony and evaluating the evidence, the trial judge determined that Mr. Walker was 100% at fault and awarded Ms. Hamilton damages. Mr. Walker and Allstate Insurance Company filed an appeal.

**PROCEDURAL FACTS**

Ms. Hamilton filed suit in Alexandria City Court on October 19, 2000 against Mr. Walker and Allstate Insurance Company. On February 27, 2004, Ms. Hamilton amended her petition to include as a defendant her own insurance company, New Hampshire Insurance Company.

Trial was held August 6, 2004 and judgment was rendered and signed that same day. The trial court determined that Mr. Walker was 100% at fault and awarded Ms. Hamilton $27,094.74 in damages along with expert witness fees, costs and interest. Appellants, Mr. Walker and Allstate Insurance Company, timely filed a suspensive appeal on August 10, 2004.

**ASSIGNMENTS OF ERROR**

1. The trial court committed manifest error in finding fault and resulting liability for this accident on the part of the defendant-driver, Charles R. Walker.

2. Alternatively, the trial court committed manifest error in failing to apportion a percentage of the fault onto the plaintiff-appellee.

3. The trial court abused its discretion in making an excessive general damage award to the plaintiff-appellee.

**LAW AND ANALYSIS**

Findings of the trial court are reviewable on appeal, and the appellate standard of review has been clearly established. A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1111 (La. 1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112

**ASSIGNMENT OF ERROR NUMBER ONE**

Mr. Walker and Allstate Insurance Company argue that the trial court committed manifest error when it determined that Mr. Walker was 100% at fault for the accident. The appellee, Ms. Hamilton, contends that the trial court correctly found Mr. Walker 100% at fault as no evidence or testimony existed to establish otherwise. The standard the appellate court must utilize in determining whether to affirm or reverse the trial court is manifest error.

The appellants' first argument in support of this assignment of error is that Officer Mikel's report clearly cites Ms. Hamilton's failure to yield, thereby placing liability for the accident on Ms. Hamilton. The report does show that Officer Mikel marked on the report that Ms. Hamilton failed to yield and that in his opinion, Mr. Walker had control of the intersection. However, this report is not conclusive, as the parties stipulated that any portions of the report that represented the officer's opinion

would be excluded. In addition, as the officer failed to provide a deposition, there is no way to determine what information he based his report on or to evaluate the credibility of that report. Also, Ms. Hamilton testified that Officer Mikel was in a rush and did not have time to take a thorough statement from her. Therefore, in determining liability, it is necessary to examine additional evidence concerning this accident.

At trial, Ms. Hamilton testified about how she believed the accident occurred. She stated that at the time of the accident, she was attempting to travel from Super 1 Foods in Alexandria to her home, and when questioned about her approach to U.S. Hwy. 71, she testified as follows:

Q. What happened as you approached that intersection? Did you have a green light, a red light, what?
A. Which intersection are you talking about?
Q. Just before proceeding across MacArthur Drive, the four lanes across MacArthur Drive.
A. I had a red light to go, I mean a green light to go across.
Q. O.k., before the green light though, were you stopped there?
A. Yes, I had to stop first and then it turned.
Q. O.k., and you were stopped for a red light?
A. Right.
Q. Was there anyone in front of you?
A. No, nobody in front of me.
Q. O.k., so you were stopped at that intersection facing the Phillips 66 service station?
A. Correct.
Q. Then the light turned green?
A. Yes.
Q. And what happened after that?
A. Then I proceeded across.
Q. O.k., so you went across the south bound two lanes, you went across the north bound two lanes and what happened?
A. And well, there was a car way down and he failed to yield at the yield sign and hit me when I turned.
Q. O.k., and again that is on the service road right there in front of that Phillips 66?
A. Correct.

4

Q. O.k., and it is your testimony he failed to yield at the yield sign?
A. Yes.

Later, Ms. Hamilton clarified in her testimony that she did not actually see Mr. Walker fail to yield but assumes that was the cause of the accident.

Mr. Walker's deposition presents a different story. On the day of the accident, Mr. Walker and his wife had traveled from their home in Marksville to Alexandria with the intention of shopping at Sutherlands. Mr. Walker testified that when they left the Piccadilly restaurant, he made a right turn and proceeded down the access road to the location of the accident. Mr. Walker testified that he did not cross or drive on MacArthur highway, which is contested by the plaintiff. He recalls the accident as follows:

Q. Do you recall how fast you were going along the service road?
A. I was stopped and just started from the sign. There's a van, mini van in front of me and it was waiting for the red light to change, so it could get over on MacArthur Drive.
Q. And did that mini-van pull out?
A. Yeah.
Q. And did it turn?
A. They pulled when the light – when the light changed.
Q. And did it turn left to go onto MacArthur?
A. Yeah. To get on MacArthur Drive, yes.
Q. Okay. And then what did you do?
A. I was behind it and was proceeding straight.
Q. Okay. When he pulled out did you just pull out right behind him?
A. No. I looked up and down there and there wasn't a damn car between the service roads.
Q. Between service road, in other words. . .
A. No. From one side of MacArthur to the other side.
Q. To the other?
A. Yeah[.]
Q. Okay. And so you decided to pull out?
A. Well, yeah. I was going leisurely, if a car had come I'd had accelerated and gone on, you know, faster.
Q. Okay. So, you leisurely pulled out and but if a car would have come you would accelerate faster?
A. Yeah. And went on through. No. Across.

Q. Uh-huh.
A. I was two-thirds across the street when the accident happened.
Q. I see. When did you first notice Ms. Hamilton's vehicle?
A. I didn't notice her until she hit me.

Although each party's version of the accident is different, there is one common similarity, i.e., a green light. Ms. Hamilton testified that she had a green light to cross over U.S. Hwy. 71 and Mr. Walker stated that the minivan directly in front of him had a green light to cross over onto U.S. Hwy. 71. The evidence suggests that Ms. Hamilton had a green light and Mr. Walker had a yield sign. Therefore, the officer's report is insufficient to establish Ms. Hamilton's liability as the evidence clearly establishes that Ms. Hamilton had a green light.

The appellant's second argument in support of this assignment of error is based on an adoptive admission they allege Ms. Hamilton made at the scene of the accident.

Q. Okay. What happened after the accident?
A. Well, I got out of the car and I was a little angry **and I told her, I said you run the red light and it was nothing said** and we started changing insurance information.
(Emphasis added.)

Mr. Walker accused Ms. Hamilton of running the red light and appellants argue that Ms. Hamilton's failure to deny the allegation amounts to an adoptive admission. Appellants contend that this admission coupled with the officer's report should have established Ms. Hamilton's liability for the accident. According to *State v. McClain,* 222 So.2d 855, 856-57 (La.1969) (citations omitted), *cert. denied,* 319 U.S. 911, 90 S.Ct. 2205 (1970), an adoptive admission is defined as the following:

> If a statement incriminating a defendant is made by another in the defendant's presence and hearing, under circumstances where a denial, explanation, or reply would be expected and where the defendant is not in legal custody and is at full liberty to speak, evidence of that statement, and of the defendant's silence and failure to deny or explain it, may be

submitted to the jury for consideration as an admission by the defendant of that statement.

However, the adoptive admission in the case referred to by the appellants occurred in a criminal context and that case is not directly on point with the facts before us. In addition, a thorough study of the record failed to reveal any references to this alleged adoptive admission at trial. During the examination of Ms. Hamilton, neither party questioned her about this admission or even made reference to it. Also, during closing arguments, neither party discussed this admission. The only evidence presented of this was in Mr. Walker's deposition where he states that he told her she ran a red light, but there is no evidence to indicate that Ms. Hamilton even heard the accusation. In addition, he accuses her of running a red light, but specifically states that traffic attempting to cross over U.S. Hwy. 71 had a green light, which coincides with Ms. Hamilton's testimony. This statement to Ms. Hamilton, without more, is insufficient to establish Ms. Hamilton's liability for this accident. Therefore, we find this alleged "adoptive admission" argument lacking as even the defendant's statements are contradictory.

Therefore, as the appellants have provided no persuasive arguments, we find that the trial court did not commit manifest error in finding Mr. Walker 100% at fault.

**ASSIGNMENT OF ERROR NUMBER TWO**

We find it unnecessary to discuss this assignment of error as we have affirmed the trial court's determination that Mr. Walker was 100% at fault.

**ASSIGNMENT OF ERROR NUMBER THREE**

The appellants argue that the trial court abused its discretion in awarding Ms. Hamilton an excessive amount of general damages, and contends that damages should

be reduced accordingly. The award of $27,000.00 is comprised of $20,000.00 in general damages, $5,000.00 in damages to cover the period from the last doctor's visit in September 2000 until the date of trial, and $2,000.00 for future damages. The appellee argues that the award is proper as no evidence was produced to contradict the evidence presented.

The proper standard for reviewing general damage awards was enunciated in *Guillot v. Doe,* 03-1754, p. 5-6 (La.App. 3 Cir. 6/30/04), 879 So.2d 374, at 379-380. (Citations omitted.)

> An appellate court should rarely disturb an award of damages due to the great and, even, vast discretion vested in the trial court. We can disturb such awards, only, when the trial court clearly abused its discretion.
>
> Reasonable people often disagree over the appropriate measure of general damages in a particular case. Yet, "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award."
>
> We should not rely on a comparison of prior awards in cases with similar medical injuries to decide whether the trial court abused its discretion. "The primary considerations in assessing damages are the severity and duration of the injured party's pain and suffering."

The appellants suggest that in determining the proper amount of damages the trial court should not have relied on other cases. In support of this contention, *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257, 1260 (La.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1059 (1994), states "[e]ach case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration." We agree that the facts of this case should have determined the damages awarded and not an analysis of other cases inconsistent with the present case facts.

8

The injury in which this suit is based occurred approximately five years ago and during that time, Ms. Hamilton only sought medical advice twice. The accident in question occurred on October 22, 1999, but Ms. Hamilton did not seek medical attention for her injury until November 4, 1999. At that visit, Dr. Brian, Ms. Hamilton's family physician, diagnosed her injury as a "contusion" or bruise to her ribs and merely prescribed over the counter medication, and Ms. Hamilton testified that she took Tylenol for this condition. On December 2, 1999, Dr. Brian provided Ms. Hamilton with an excuse for jury duty.

Following the November 1999 visit, Ms. Hamilton did not seek Dr. Brian's medical services again until May 2000 and this visit was due to a recent arm injury.

> Q. And did you see her after that in a follow up visit regarding her ribs or anything else in the accident?
> A. No, I didn't. The next time I saw her wasn't until May of 2000.
> Q. And how was she in May?
> A. **At that time she was doing okay**. She had injured her forearm on a piece of furniture.

(Emphasis added.)

Almost seven months from the date of injury, Dr. Brian noted that Ms. Hamilton was doing okay. However, when Ms. Hamilton returned to Dr. Brian on September 22, 2000 with complaints of pain in her ribs, Dr. Brian determined this pain to be consistent with the October 1999 car accident, and he ordered a bone density test which was normal. At that visit, Dr. Brian did not prescribe any pain medication, but recommended that she take a calcium supplement based on her age.

When the doctor was asked if there was anything he could attribute the painful rib to, he stated:

> I don't have a good explanation for that other than subjectively the patient told me that she had been hurting since that point in time and

> that's all I can do is go by her history, that she had a bruise there and it set up a painful situation for her that, for whatever reason, did not stop until that point [i]n time.

However, when Dr. Brian was questioned concerning the healing time for a bruised rib, he stated that normally bruised ribs heal in two to six weeks, but that "in general older people don't heal, bounce back as quick as younger people."

At the September 2000 visit, Dr. Brian did not prescribe any course of treatment nor did he recommend therapy, further tests or that she see a specialist. Over a period of five years, Ms. Hamilton sought medical attention twice for this injury and only took over the counter medication to combat the pain. Although Ms. Hamilton testified that she still experiences pain today, she has not seen a doctor or attempted any medical treatment in more than four years. Therefore, based on these particular facts, we find that the trial court abused its discretion in awarding $27,000.00 in general damages and we reduce that award to $15,000.00 with special damages remaining the same.

**CONCLUSION**

Having found no evidence that the trial court committed manifest error, we affirm the trial court's determination that Mr. Walker was 100% at fault in the accident. However, because the trial court abused its discretion in awarding an unreasonable and excessive amount of damages, we reduce general damages from $27,000.00 to $15,000.00. Appellants are responsible for the costs of this appeal.

**AFFIRMED IN PART & REVERSED IN PART.**